## MODJESKI v. BERTELSEN et al.
### No. 2893.

Circuit Court of Appeals, First Circuit.
May 18, 1934.

Richard Wait, of Boston, Mass. (Bailey Aldrich, of Boston, Mass., on the brief), for appellant.

S. E. Gifford, of Boston, Mass., for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an action of contract brought by the plaintiff, an engineer, against seven individuals, all residents of Massachusetts, the incorporators of the Boston & North Shore Improvement Association, Inc., to recover a fee for preparing a report on a proposed bridge. One of the defendants defaulted, another became bankrupt. The suit went to trial against the remaining five. After trial and before judgment was entered, the plaintiff discontinued the suit as to two of the five and judgment was entered on December 4, 1933, in favor of the three remaining defendants, Phinney, Gifford, and Bertelsen, and this appeal was taken.

The contract in question is found in the following instrument:

"Boston, Mass. July 16, 1925.
"Mr. Ralph Modjeski 121 East 38th Street, New York City.

"Dear Mr. Modjeski: Acknowledging your proposition dated Eagle River, Wiscon-

sin, June 24, 1925, in regard to a preliminary report on the proposed Boston Harbor Bridge, I am authorized by the Directors of the Boston and North Shore Improvement Association, Inc., to advise you of the acceptance of the proposition insofar as it pertains to the payment to you of $15,000 for a preliminary report which is to be made to the Division of Metropolitan Planning, The Commonwealth of Massachusetts, Mr. Henry I. Harriman, Chairman, 11 Beacon Street, Boston, Massachusetts.

"In regard to the conditions of your agreement whereby the Boston and North Shore Improvement Association, Inc., shall retain you as an engineer for the actual design and construction of the Bridge, this is at the present not within our jurisdiction, but it is our full intent if we are affiliated with the final project, as to construction, to conform to this part of your proposal.

"It is further understood that you will co-operate with Mr. Harriman and his Board and make your report direct to that body. It is further understood that such copies of the report as are not required by the Planning Board will be furnished to us.

"Yours truly,
"Boston & North Shore Improvement
Association, Inc.
"By Wallace B. Phinney, Secretary.
"WBP:CAB.
"Accepted July 16, 1925, R. Modjeski."

As stated in the above letter or contract, the plaintiff had previously submitted a proposal for making a preliminary report on the proposed bridge, and, at the time the proposal was submitted (June, 1925), he came to Boston and conferred with the defendant Phinney and certain other defendants. He was then told by Phinney that a corporation was to be organized under the laws of Massachusetts with capital stock which would be subscribed for by those interested in the proposed improvement and that any contract which would result would be between the plaintiff and the contemplated corporation.

July 2, 1925, the seven defendants met to incorporate the Boston & North Shore Improvement Association, Inc., under chapter 180 of the General Laws of Massachusetts, the chapter covering the organization of corporations for charitable, civic, and certain other purposes. The purpose of forming the corporation was for "advocating and encouraging the development of the Port of Boston and the construction of a bridge from Boston proper to that part of Boston known as East

Boston, to improve the transportation facilities between Boston and the North Shore."

All of the seven defendants signed the agreement of association. It and the articles of organization required by the statute were filed in the Department of Corporations and Taxation July 10, 1925, and, on July 11, 1925, the Commissioner of Corporations indorsed his approval on the articles of organization and filed them, with the required fee, with the secretary of the commonwealth, who issued a certificate of incorporation bearing date of July 28, 1925. The agreement of association and the articles of organization showed that the subscribers held their first meeting July 2, 1925, and that on or before July 10, 1925, had fixed their capital, chosen a president, treasurer, clerk, and five directors and that before July 16, 1925, stock certificates had been prepared and a corporate seal obtained; and it is found that the defendant Phinney, who signed the contract for the Boston & North Shore Improvement Association, Inc., as secretary or clerk, believed that the organization of the corporation had been completed.

The contract having been signed, the plaintiff proceeded to carry out his part and submitted his report with plans and specifications to the Division of Metropolitan Planning. It is specifically found that the work was done for the corporation and that the plaintiff, in his letter submitting the report to the Division of Metropolitan Planning, stated that "it is submitted in accordance with arrangements made with the corporation and upon instructions received by him from the corporation"; that in the latter part of 1925 the plaintiff accepted two checks drawn by the corporation (one dated November 24, 1925, and the other December 5, 1925), in part payment of what was due him under the contract and gave receipts running to the corporation therefor; that up to that time he had no idea of holding the defendants personally liable; that the defendants had no intention of entering into partnership relations or of assuming any partnership liabilities; and that they never at any time authorized the defendant Phinney, as secretary, to act as their agent or enter into any contract for which they would be personally liable.

It is further found that when the contract of July 16, 1925, was signed, the corporation had accomplished the main purpose for which it was organized; that all that remained to be done was to sell enough of its stock to yield the funds with which to pay the plaintiff—as to which they were not successful.

In the District Court the plaintiff's contention was that the corporation did not have a legal existence prior to July 28, 1925, and therefore the subscribers to the agreement of association were liable as copartners. In this court he has shifted his position and contends that, although the contract was entered into in the name of the corporation, the incorporators are liable personally if they directly participated in creating the liability, the corporation not having a legal existence at the time of the making of the contract.

In the District Court it was held that the defendants were not liable on the contract, (1) for the reason that on July 16, 1925, when the contract was made, the corporation was a de jure corporation; (2) if it was not a de jure corporation, it was then acting as a corporation de facto; and (3) that the corporation, in any event, came into existence not later than July 28, 1925, and thereafter assumed or adopted the contract by receiving its benefits and recognizing and treating it as a valid and binding obligation of the corporation.

While we are inclined to believe that the last two grounds were correctly decided, we do not rest our decision upon either of them, for we are of the opinion that the conclusion reached by the court below as to the first ground must be sustained.

The statutory provisions necessary to a consideration of the question, whether the corporation had a legal existence on and after July 11, 1925, are sections 1, 2, 3, and 5 of chapter 180 and sections 11 and 12 of chapter 156 of the General Laws of Massachusetts.

Section 1 of chapter 180 provides that seven or more persons, the majority of whom are residents of Massachusetts, may form a corporation for any of the purposes named in section 2. Section 3 of that chapter provides that "the corporation shall be formed in the manner prescribed in and subject to section nine of chapter one hundred and fifty-five and sections six and eight to twelve, inclusive, of chapter one hundred and fifty-six, except as follows" (the exceptions are not here material). Sections 11 and 12 of chapter 156 read in part as follows:

"Section 11. The articles of organization, the agreement of association, and the record of the first meeting of the incorporators, including the by-laws, shall be submitted to the commissioner, who shall examine them and who may require such amendment thereof or such additional information as he deems necessary. If he finds that the provi-

sions of law relative to the organization of the corporation have been complied with, he shall endorse his approval on the articles. Thereupon, the articles shall, upon payment of the fee provided by section fifty-three, be filed in the office of the state secretary, who shall cause them and the endorsement thereon to be recorded.

"Section 12. Upon the approval and filing as above provided of the articles of organization of a corporation organized under general laws, the state secretary shall issue a certificate of incorporation in the following form."

Then follows a form of certificate which contains two blank spaces for inserting "the names of the subscribers to the agreement of association"; two blank spaces for the insertion of "the name of the corporation"; and one blank space for the insertion of "the name of the secretary." At the foot of the certificate is the following:

"Witness my official signature hereunto subscribed, and the great seal of the commonwealth of Massachusetts hereunto affixed, this         day of         in the year         (the date of filing of the articles of organization)."

This section also contains the following provision:

"The state secretary shall sign the certificate of incorporation and cause the great seal of the commonwealth to be thereto affixed, and such certificate shall have the force and effect of a special charter. The existence of every corporation organized under general laws shall begin upon the filing of the articles of organization in the office of the state secretary. The state secretary shall also cause a record of the certificate of incorporation to be made, and such certificate, or such record, or a certified copy thereof, shall be conclusive evidence of the existence of such corporation."

Section 5 of chapter 180 provides in substance that, in the case of a corporation formed for any of the purposes specified in section 2, chapter 180, the state secretary "before making and issuing a certificate of incorporation" may (in his discretion), if the corporation is to have its principal office in Boston (as in this case), require a report of the police commissioner of that city as to "whether any of the proposed incorporators have been engaged in the illegal selling of intoxicating liquor or in keeping places or tene-

ments used for illegal gaming, or whether they have been engaged in any other business or vocation prohibited by law," and "if, in his opinion, it appears from said report or otherwise that the probable purpose of the formation of the proposed organization is to cover an illegal business, he shall refuse to issue a certificate of incorporation."

It is clear from the express provisions of section 12 of chapter 156 (1) that "the existence of every corporation organized under general laws shall begin upon the filing of the articles of organization in the office of the state secretary"; (2) that upon the approval and filing as provided (in section 11) of the articles of organization of a corporation organized under general laws, the state secretary shall issue a certificate of incorporation; and (3) that in signing the certificate of incorporation he shall insert in the blank space for the date, not the date of issuing the certificate, but "the date of filing of the articles of organization."

In the instant case it appears that the state secretary, instead of inserting "the date of filing of the articles of organization" at the end of his certificate, inserted the date of issuance of the certificate. But we take it that, in view of the express provisions of law, this mistake or oversight on his part does not change the situation and that the certificate is to be considered the same as though he had inserted the date of filing of the articles of organization (July 11, 1925).

This being so, and he having issued the certificate of incorporation without having exercised his discretion and required a report from the police commissioner of Boston, we think the corporation came into existence on July 11, 1925, the date on which the articles of organization were filed in his office and the requisite fee paid. It is unnecessary for us to consider what would be the status of the corporation had the secretary of state not issued the certificate of incorporation, but, in the exercise of his discretion, had called for a report and the report, in his opinion, had shown that "the probable purpose of the formation of the proposed organization * * * [was] to cover an illegal business," for such a situation is not here presented.

The judgment of the District Court is affirmed, with costs to the appellees.

MORTON, Circuit Judge, concurs in the result.